## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

Steven D. Goodrich                                              Case No.  14-01022-als7

                              Debtors                           Chapter 7

United Service Credit Union                                     Adv. Pro. 14-30043-als

                              Plaintiff

              v.

Steven D. Goodrich

                              Defendants


### MEMORANDUM OF DECISION
### (date entered on docket: April 2, 2015)


Trial was conducted on the Plaintiff's complaint to determine the dischargeability of debt

pursuant to 11 U.S.C. section 523(a)(2)(A), (B) and (C) on January 5, 2015.  William Baresel

appeared for the Plaintiff, United Service Credit Union ("Credit Union").  The Defendant, Steven

D. Goodrich ("Goodrich") was represented by Douglas Reed.

The court has jurisdiction of these matters pursuant to 28 U.S.C. sections 157(b)(1) and

1334.  Upon consideration of the evidence and arguments the following findings of fact and

conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure

7052 and 9014.  For the reasons stated herein the complaint is dismissed.

## **FACTS**

Goodrich approached the Credit Union for a loan to pay his propane bill and catch up on mortgage payments.  On the Loanliner Application he stated that he had been employed as a dozer at Kent Ruble Dozing since March 2010 and earned $30,000 annually.  Based upon that information the Credit Union approved the loan and deposited $5,000 in Goodrich's account on January 7, 2014.  That same day, Goodrich withdrew $2,500.  He paid a propane bill on January 10, 2014 in the amount of $450 and two mortgage payments on January 16, 2014 in the total amount of $1,279.43.

After receiving the loan Goodrich deposited his unemployment benefits into his bank account at the Credit Union.  Between January 24, 2014 and the date he filed bankruptcy his account reflects various cash withdrawals totaling approximately $6,280 which included an amount of over $2,581 obtained at Prairie Meadows Casino which Goodrich admits he used for gambling.  Goodrich made one loan payment to the Credit Union.

Goodrich filed a chapter 7 bankruptcy petition on April 24, 2014.  Goodrich's Schedule I states that he is not employed; he lists his gross wages, salary and commissions as $842.35 and unemployment compensation as $1,031.25.  Goodrich's Statement of Financial Affairs states that his income in 2013 was $35,473.

A timely complaint was filed by the Credit Union requesting that the debt owing to it be declared non-dischargeable pursuant to 11 U.S.C. section 523(a)(2)(A), (B) and (C).

## <u>DISCUSSION</u>

**1.  11 U.S.C. section 523(a)(2)(A)**

Section 523(a)(2)(A) provides that:

> A discharge under section 727 . . . of this title does not discharge
> an individual debtor from any debt . . . for money, property,
> services, or an extension, renewal, or refinancing of credit, to the
> extent obtained, by – false pretenses, a false representation, or
> actual fraud, other than a statement respecting the debtor's or an
> insider's financial condition.

11 U.S.C. § 523(a)(2)(A) (2014).  To successfully except a debt from discharge under this

section a showing of actual fraud by either direct or circumstantial evidence is required.  <u>See</u>

<u>Lipka v. Donley</u> (<u>In re Donley</u>), 115 B.R. 502, 503 (Bankr. E.D. Pa. 1990).  The plaintiff must

show

> 1) that the debtor made a representation; 2) that at the time the
> debtor knew the representation was false; 3) that the debtor made
> the representation deliberately and intentionally with the intention
> and purpose of deceiving the creditor; 4) that the creditor
> justifiably relied on such representation; and 5) that the creditor
> sustained the alleged loss and damage as the proximate result of
> the representation having been made.

<u>Merchs. Nat'l Bank v. Moen</u> (<u>In re Moen</u>), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (citations

omitted).

The Credit Union argues that Goodrich misrepresented the purpose of the loan, and if it

had known that the proceeds would be used for gambling it would not have extended the credit.

At trial, Goodrich testified that he also used cash from his bank account to provide money and

gifts to his mother and sons, to pay other bills and to repay loans to other people.  Goodrich

represented that the purpose of the loan was to pay his propane bill and two mortgage payments.

The evidence at the hearing showed that Goodrich did, in fact, pay his propane bill and make two

mortgage payments with the proceeds of the loan.  The Credit Union's witness conceded this point.

The evidence does not contain any statement from Goodrich that itemized the amount he needed to pay his propane and mortgage bills.  The record is silent as to what information the Credit Union relied upon in making the loan in the amount of $5,000.  Absent these details, the Credit Union has not met its burden of proof to show that there was a misrepresentation upon which it relied.

The Credit Union also contends that Goodrich represented that he was able and willing to pay back the loan, which at the time Goodrich knew was false.  In order to prevail under this subsection the Credit Union must also show that it justifiably relied on Goodrich's representation.

> [T]he creditor's reliance will likely be justified if there is nothing on the face of the representation that would lead the creditor to believe that the representation is false, or if the creditor does not have actual knowledge from which he should realize the representation is false at the time it is made."

In re Meyer, 296 B.R. 849, 862 (Bankr. N.D. Ala. 2003).

The Credit Union's witness, Ms. Healy, testified that at the time of making the loan she knew that Goodrich was unemployed.  Based upon this statement, the Credit Union had actual knowledge of his current circumstances rendering any reliance on Goodrich's implied assertion that he would be able to repay the loan unjustifiable.

**2.      11 U.S.C. section 523(a)(2)(B).**

Under the Bankruptcy Code:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . use of a statement in writing – (i) that is

> materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

11. U.S.C. § 523(a)(2)(B) (2011).

"A written statement is materially false if it paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information that would normally affect the lender's decision to extend credit." Northland Nat'l Bank v. Lindsey (In re Lindsey), No. 10-6045, 2011 WL 383735, at *2 (B.A.P. 8th Cir. Feb. 8, 2011) (citing Premier Bank v. Koester (In re Koester), 437 B.R. 363, 368 (Bankr. E.D. Mo. 2010)).

According to the testimony, one of the Credit Union's missions is to loan money to those in need. Of course, the Credit Union expects to be repaid for such loans. Ms. Healy stated that at the time of making the loan she knew that Goodrich was laid off from his job. Based upon annual income, Goodrich was well within the ratios used by the Credit Union to approve a loan in the amount of $5,000. Goodrich's loan file came to Ms. Healy's attention when he did not make the second installment payment. It was at that time, after the credit was extended, that she contacted Kent Ruble Dozing and verified that Goodrich was an employee. Follow up calls were also made to Goodrich, his mother and his employer in an effort to have the default cured.

In spite of its knowledge that Goodrich was laid off at the time of the loan application, the Credit Union now contends that the financial information provided is a misrepresentation because an annual salary amount was stated on the form rather than the monthly amount of his unemployment benefit   It is clear that Goodrich experiences seasonal unemployment that routinely occurs during the winter months. The time period of his lay-off in 2014 was longer than normal. There is no evidence in the record that suggests that Goodrich did not routinely

earn at least $30,000 a year at the job he has held since 2010.  At worst, the loan application simply lacked detail as to all sources of income received which does not constitute a misrepresentation as to the amount of Goodrich's annual income.  The Credit Union has failed to meet its burden to show that the credit application contains false information.

**3.      11 U.S.C. section 523(a)(2)(C)**

11 U.S.C. section 523(a)(2)(C) provides that:

> consumer debts owed to a single creditor and aggregating more than $650 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title, are presumed to be nondischargeable; and cash advances aggregating more than $925 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable.

The statute excludes goods or services reasonably necessary for the support or maintenance of the debtor in the definition of luxury goods.  A court in this district has held that once the Plaintiff demonstrates the applicability of this statute, the burden shifts to the Debtor to prove the debt is dischargeable. In re Cron, 241 B.R. 1, 7-8 (Bankr. S.D. Iowa 1999).  In order to rebut the presumption, a debtor must establish "that the debt was not incurred in contemplation of obtaining a discharge in bankruptcy." Id.

"There are five elements to the applicability of the presumption of § 523(a)(2)(C) to luxury goods and services: the debt must be (1) a consumer debt, (2) for "luxury goods or services," (3) incurred on or within 90 days before the order for relief (the date of filing for a voluntary petition), (4) owing to a single creditor, (5) aggregating more than $650." 2 Bankruptcy Litigation § 13:35 (2014).

The Credit Union loaned Goodrich the funds on January 7, 2014.  Goodrich filed his bankruptcy petition on April 24, 2014.  In order for section 523(a)(2)(C) to apply to Goodrich the

debt would have to have been incurred within 90 days before the order for relief, or after January 24, 2014.  The Credit Union's loan was made outside of this timeframe, therefore this section is inapplicable.  The Plaintiff has not met its burden under 11 U.S.C. section 523(a)(2)(A).

<u>CONCLUSION</u>

At trial there was a substantial amount of testimony elicited related to the information contained on the schedules that was inaccurate, incorrect or possibly untrue.  These facts are not relevant to whether a debt is dischargeable under 11 U.S.C. section 523(a)(2), but are more applicable to a cause of action under 11 U.S.C. section 727(4) which was not pled in the complaint.  For this reason, it is not necessary for the Court to address these contentions.

A plaintiff bears the burden of proof for all requisite elements for causes of action arising under 11 U.S.C. section 523(a)(2) by a preponderance of the evidence.  <u>See</u> <u>Grogan v. Garner</u>, 498 U.S. 279, 286 (1991).  Dischargeability actions are narrowly and strictly construed against the creditor and in favor of the debtor.  <u>See</u> <u>Lipka v. Donley</u> (<u>In re Donley</u>), 115 B.R. 502, 503 (Bankr. E.D. Pa. 1990) (citing <u>Koltman v. Hammill</u> (<u>In re Hammill</u>), 61 B.R. 555 (Bankr. E.D. Pa. 1986)); <u>Rembert v. AT&T Universal Card Servs., Inc.</u> (<u>In re Rembert</u>), 141 F.3d 277, 281 (6th Cir.1998). Applying this standard, and based upon the reasons stated herein, the Plaintiff has not met its burden under all of the required elements of 11 U.S.C. sections 523(a)(2)(A), (B) or (C).

IT IS THEREFORE ORDERED that:

1. The Plaintiff's complaint is dismissed.

2. The parties shall bear their own costs.

3. Judgment shall enter accordingly.

/s/ Anita L. Shodden
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding